LOUIS S. WEINTHAL, administrator, &c., of Augusta Phillips, deceased, complainant-respondent,

*v.*

EVA BAREND et al., defendants-appellants.

———

HANNAH LUBELL, complainant-respondent,

*v.*

EVA BAREND et al., defendants-appellants.

[Decided May 14th, 1928.]

A finding by the vice-chancellor that the claimants in this case, who had rendered services to the testatrix in her last illness, had fraudulently attempted to secure assets of the estate when the will of the testatrix was found to be void, *held*, erroneous under the evidence.

———

On appeal from a decree in the court of chancery.

*Mr. James F. X. O'Brien,* for the appellants.

*Mr. George T. Vickers* and *Mr. John A. Bennett,* for the respondents.

The opinion of the court was delivered by

CAMPBELL, J.

Augusta Phillips, being afflicted with cancer, came to live in the home of her cousin, Eva Barend, in Monclair, in September, 1921, where she remained until October, 1922, when she was admitted to a hospital in Orange, where she remained until her death in March, 1923. A paper purporting to be

her last will and testament was refused probate because it appeared that the subscribing witnesses did not sign in the presence of each other. By such paper she attempted to dispose of her estate—as far as the purposes of this matter are concerned—by giving to her sister, Hannah Falk Autenreith, or Lubell, or Lubelsky, the sum of one dollar; to Dr. Edward E. Hyems $500 and to Eva Barend her diamond earrings and Liberty and Victory bonds amounting to $4,000. Dr. Hyems and Charles Barend, the husband of Eva Barend, were named as executors. Subsequent to the refusal to probate the will, Louis S. Weinthal was appointed administrator of the estate.

Ovidio C. Bianchi, a member of the bar, represented Eva Barend, and it was, at least in part, upon his suggestion that Louis S. Weinthal was induced to act as, and was appointed, administrator.

After such appointment, Bianchi presented to the administrator claims against the estate which were paid. One of these was that of Dr. Hyems for $1,500 for professional services rendered Mrs. Phillips, and, another, that of Eva Barend for $3,360 for board, care and nursing of Mrs. Phillips for fifty-six weeks at $60 per week. Shortly after the payment of these claims the administrator employed another attorney, and demanded that Mrs. Barend return to him the money paid her upon her claim and bring suit to establish her claim. This demand not being complied with, the administrator filed a bill of complaint alleging the presentation and payment of the Barend claim upon the advice of Bianchi, who, he subsequently learned, had an agreement for the payment of a contingent fee with Mrs. Barend if the claim was paid, and alleging that he would not have paid the claim had he known of Bianchi's interest therein; that Hannah Lubell, being the only heir-at-law of his intestate and entitled to receive her entire estate, had given him notice that she would contest the payment of the Barend claim and intended to file exceptions to his account; that Bianchi and Mrs. Barend had agreed to return the money paid in satisfaction of such claim and test the right to such payment by a suit at law, but had failed to keep such agreement, and refused to make such

repayment, and that Mrs. Barend was about leaving the state and removing all her property therefrom; that the money paid her in satisfaction of her claim, or a large part thereof, remained upon deposit in banks in Montclair, and that unless Mrs. Barend be restrained from removing such funds the administrator would be unable to protect himself against the payment of such claim. The prayer of the bill was that Mrs. Barend and Bianchi be enjoined, pending an adjudication in a court of law of the validity of the claim, from using the money paid or withdrawing it, and that they be required to make payment thereof to the clerk of the court of chancery pending the result of the proceedings under the bill of complaint.

This bill of complaint was filed April 11th, 1925. On May 26th, 1925, Hannah Lubell filed her bill in which she charges that Bianchi and Mrs. Barend were in collusive agreement to defraud the estate of Mrs. Phillips, that the claim of Mrs. Barend was fraudulent, and that the services charged for were not performed, and further, that the claim of Dr. Hyems was fraudulent, and that all of the services performed by him were gratuitous; that the moneys paid to Mrs. Barend were deposited in banks in Montclair and that she was about to remove from the state and remove such funds, and the bill prays that Mrs. Barend be restrained from withdrawing the moneys in question from the banks until the termination of the action, and that she and Bianchi be required to account to the estate and pay over to it all moneys received from it, and that a like decree be directed toward Dr. Hyems.

Both causes were heard together.

The learned vice-chancellor found that Mrs. Barend, acting in conjunction with Bianchi, "deliberately attempted to secure the assets of the estate" when she found that the will of Mrs. Phillips was void, and that Mrs. Barend had been paid in full for her services by Mrs. Phillips during her lifetime. This he based upon bank statements showing payments of $65 for several months. It is explained that these items were in exchange for cash from Mrs. Barend for checks with which to make payment of rent. It is reasoned that this cannot be true because there are no corresponding deposits to the bank

38

account of Mrs. Phillips. We think, however, that this is far from conclusive evidence of the untruth of the explanation of Mrs. Barend.

We disagree with the learned vice-chancellor that the proofs show and establish a collusive agreement between Mrs. Barend and her attorney, Bianchi, to defraud the estate of Mrs. Phillips, but that, on the contrary, such proofs do establish that the services charged for by Mrs. Barend were performed and were reasonably worth the sum claimed; that Mrs. Phillips promised to compensate her therefor by and through her will, and did in fact so provide, and that such intent and purpose would have been consummated but for the technical defect in the execution of such paper. It must be remembered that Mrs. Lubell, the step-sister of Mrs. Phillips, had paid no attention to her for many years prior to her death, and that Mrs. Phillips' attitude toward her was clearly expressed by her intended last will and testament.

We conclude that the proofs do not warrant the conclusions of the vice-chancellor nor the decree advised by him based thereon, and such decree is therefore reversed.

*For affirmanace*—MINTURN, KALISCH, JJ.   2.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ.   13.